IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ORBITAL AUSTRALIA PTY LTD,
et al.,

          Plaintiffs,

v.                              Civil Action No. 3:14CV808

DAIMLER AG, et al.,

          Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT ROBERT BOSCH LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 27); DEFENDANTS MERCEDES-BENZ USA, LLC AND MERCEDES-BENZ U.S. INTERNATIONAL, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 34); DEFENDANT ROBERT BOSCH GMBH'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 100); DEFENDANT DAIMLER AG'S MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 105); and DEFENDANT ROBERT BOSCH LLC'S MOTION FOR PROTECTIVE ORDER TO RESPOND TO RESPOND [sic] TO JURISDICTIONAL DISCOVERY REQUESTS 12-24 (Docket No. 85). For the reasons stated below, the motions will be granted in part and denied in part as moot.

## BACKGROUND

On December 2, 2014, Orbital Australia PTY LTD ("Orbital Australia") and Orbital Fluid Technologies, Inc. ("Orbital Fluid") (collectively, "Orbital" or "Plaintiffs") filed the present action alleging infringement of U.S. Patent Nos. 6,923,387 ("the '387 patent"), 5,655,365 ("the '365 patent") and 5,606,951 ("the '951 patent") by Defendants Daimler AG ("Daimler"), Mercedes-Benz USA, LLC ("MBUSA"), and Mercedes-Benz U.S. International, Inc. ("MBUSI"), as well as Robert Bosch GmbH ("Bosch GmbH") and Robert Bosch LLC ("Bosch LLC") (collectively, "Defendants").  On February 2, 2015, Orbital filed its Amended Complaint alleging that Daimler, MBUSA, and MBUSI infringe the asserted patents by making, using, importing, selling, and/or offering for sale Mercedes-Benz automobiles, while limiting its infringement allegations against Bosch GmbH and Bosch LLC to the '387 patent.  (Docket No. 25 at ¶¶ 6, 9, 41, 46, 85, 129.)

Orbital Australia Pty Ltd is an Australian company having its principal place of business in Australia.  (Id. at ¶ 2.) Orbital Fluid Technologies, Inc., a wholly-owned subsidiary of Orbital Australia, is incorporated in Delaware.  (Id. at ¶ 1.) MBUSA is a Delaware corporation with its headquarters in Montvale, New Jersey.  (Id. at ¶ 4.)  MBUSA distributes and markets Mercedes-Benz vehicles throughout the United States. (Id.)  MBUSI is an Alabama corporation with its headquarters in

2

Vance, Alabama.  (Id. at ¶ 5.)   MBUSI manufactures Mercedes-Benz vehicles in the United States. (Id.)  Bosch LLC is a Delaware limited liability company with its headquarters in Farmington Hills, Michigan.  (Id. at ¶ 8.)  Daimler is a German corporation and Bosch Germany is a German limited liability company, both having their principal places of business in Germany.  (Id. at ¶¶ 3, 7.)

On February 20, 2015, Bosch LLC filed a motion to dismiss the Amended Complaint or, in the alternative, transfer the case out of the Eastern District of Virginia to the Eastern District of Michigan. (Docket No. 27.)  On February 27, 2015, MBUSI and MBUSA filed a motion to dismiss for lack of jurisdiction and transfer to the Eastern District of Michigan.  (Docket No. 34.) MBUSA did not challenge jurisdiction and only joined the Motion with respect to transfer.    On June 10, 2015, Bosch GmbH filed a motion to dismiss or, in the alternative, to transfer to the Eastern District of Michigan.  (Docket No. 100.)  On the same day, Daimler filed a motion to transfer to the Eastern District of Michigan.  (Docket No. 105.)  In addition, Bosch LLC has filed a motion for protective order. (Docket No. 85.)[1]

---

[1] The Bosch defendants have also filed a motion to stay the proceedings, (Docket No. 107), which remains outstanding. Resolution of this motion will rest with the Eastern District of Michigan.

## DISCUSSION

When evaluating a motion to transfer venue under 28 U.S.C. § 1404(a), courts follow a two-step inquiry. First, the court must determine whether the civil action could have been brought in the proposed transferee forum. See Jaffé v. LSI Corp., 874 F. Supp. 2d 499, 502 (E.D. Va. 2012). Second, the court should consider: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) access to evidence; (4) the convenience of the witnesses, including third-party witnesses; and (5) the interest of justice. Samsung Elec. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 716 (E.D. Va. 2005). One of the purposes of Section 1404(a) is to "prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Original Creatine Patent Co. v. Met-Rx USA, Inc., 387 F. Supp. 2d 564, 566 (E.D. Va. 2005) (quoting Van Dusen v. Barrack, 367 U.S. 612, 616 (1964)). With the interests of justice and efficient adjudication in mind, the Court will examine the relevant factors.

## I.   The Proposed Forum

For the domestic defendants, there is no question whether jurisdiction is presently proper in the Eastern District of Michigan, as all defendants have consented to jurisdiction in the transferee forum. However, the relevant question is where

4

the action "could" have been brought at the time the suit was commenced.  See Hoffman v. Blaski, 363 U.S. 335, 342-43 (1960). While later consent to in personam jurisdiction may be a valid consideration under the "interests of justice" factor of the transfer calculus, it cannot retroactively render the Eastern District of Michigan a forum where the claim could have been brought ab initio.

Bosch LLC contends that Orbital could have brought its claims of patent infringement in the Eastern District of Michigan, because the subject technology is at least minimally supported by Bosch from Michigan and because Bosch is a resident of Michigan.  Mem. in Supp. of Def. Robert Bosch LLC's Mot. to Dismiss at 16 (Docket No. 28).  Orbital does not contest that the action could have been brought in the Eastern District of Michigan.  Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 20 (Docket No. 45).  And while MBUSI contests personal jurisdiction in Virginia,[2] Plaintiffs' theory of personal jurisdiction - the theory upon which the suit was commenced in the Eastern District of Virginia - would seem to apply equally in the Eastern District of Michigan.  If the Plaintiff could have brought the claim here, then the Plaintiff could have brought the claim there.  Thus, if personal jurisdiction is

---

[2] Mem. in Supp. of Defs. Mercedes-Benz USA LLC and Mercedes-Benz U.S. Int'l, Inc.'s Mot. to Dismiss for Lack of Personal Jurisdiction at 9 (Docket No. 35)

proper in the Eastern District of Virginia – a question this Court need not, and does not, reach – then personal jurisdiction would have been proper in the Eastern District of Michigan.

As for foreign Defendant Bosch GmbH, Orbital offers alternate jurisdictional arguments. To the extent Orbital argues that personal jurisdiction is available in the Eastern District of Virginia, the same rationale discussed above holds and personal jurisdiction – if available at all – would have been available in the Eastern District of Michigan at the commencement of the suit.[3]

To the extent that Plaintiffs alternately attempt to rely upon Fed. R. Civ. P. 4(k)(2) and the burden-shifting framework articulated by the Federal Circuit in Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1415 (Fed. Cir. 2009), the Court also finds jurisdiction in the Eastern District of Michigan proper.

Simply put, this is because if Rule 4(k)(2) is truly applicable and Bosch GmbH would not have been subject to jurisdiction anywhere at the time of the suit, then – by the very operation of Rule 4(k)(2) itself – Orbital could have filed the suit in any United States jurisdiction at the time of the suit. Thus, the first facet of the Section 1404(a) analysis would be satisfied. To argue that the choice of the plaintiff

---

[3] For example, Daimler does not contest jurisdiction here or in the Eastern District of Michigan. Reply Mem. in Supp. of Def. Daimler AG's Mot. to Transfer at 3 (Docket No. 115).

should govern in such instances is to conflate the question of whether the plaintiff could have brought suit under the first prong of 1404(a) and the question of whether transfer is appropriate under the second prong of 1404(a).

The Federal Circuit's decision in _Merial Ltd. v. Cipla Ltd._, 681 F.3d 1283 (Fed. Cir. 2012), instructs no differently. In _Merial_, the defendant attempted to challenge a previously entered default judgment by the Middle District of Georgia by consenting to jurisdiction in the Northern District of Illinois. 681 F.3d at 1294. Unlike the _ex post_ consent to suit presented in that case, which was provided in an attempt to _invalidate_ the jurisdiction and judgment of the federal court in Georgia, the consent here is in the _present_ case with respect to a motion to transfer and, if Rule 4(k)(2) applies at all, it would have bestowed the choice of jurisdiction by the Plaintiffs upon _both_ federal district courts proposed. _See id._ at 1295 ("Absent some independent basis for jurisdiction, neither forum is manifestly more appropriate than the other[.]").

The _Merial_ court quite explicitly limited its holding to the facts before it and expressly declined to consider "the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction." _Id._ Because that court went out of its way to decline adopting Orbital's reading, this Court views the issue as an open

question and holds that, upon a defendant's motion to transfer under 1404(a), the question as to whether the plaintiff <u>might</u> have brought the claim in the proposed transferee jurisdiction is satisfied where jurisdiction is initially premised upon Rule 4(k)(2).

This rule also functions to simultaneously advance the purposes of both Section 1404(a) and Rule 4(k)(2). With respect to Section 1404(a), the rule encourages both parties to seek a forum that furthers the interests of justice and the efficient adjudication of disputes. The courts are well equipped under the second prong of the 1404(a) analysis to evaluate the factors in favor of transfer and make a determination as to whether the plaintiff's choice is entitled to deference and whether transfer is warranted. The plaintiff is encouraged to avoid gamesmanship and select a forum that is supported by good reasons from the outset to avoid the risk that its initial choice is upset by a well-supported motion to transfer. Similarly, the defendant is incentivized to move for an alternate forum only if plaintiff has overreached and selected a clearly inferior forum where the interests of justice and efficient adjudication weigh strongly in favor of transfer.

Rule 4(k)(2), on the other hand, was adopted to avoid a situation wherein "a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to

8

support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states." Touchcom, 574 F.3d at 1414. But, when a foreign defendant moves to transfer and consents to jurisdiction in the transferee court, that purpose is satisfied.

Moreover, adopting Orbital's interpretation of Rule 4(k)(2) would provide plaintiffs with an unreasonable amount of power by largely eliminating the burden of establishing personal jurisdiction. Plaintiffs already benefit from the burden-shifting framework adopted by the Federal Circuit in Touchcom and do not need to "prove a negative" in all 50 states before resorting to the power of Rule 4(k)(2). If defendants were barred from any motion to transfer accompanied by consent to jurisdiction in the transferee forum, then the plaintiff could forum shop without regard to personal jurisdiction, claim jurisdiction under 4(k)(2), and then rely upon the burden-shifting framework to force the defendant to either (1) submit to the plaintiff's artificial forum choice, or (2) argue that the action could have been brought elsewhere even in the absence of 4(k)(2), notwithstanding the defendant's belief to the contrary. That approach to the burden-shifting rule is unjust and unnecessary.

Finally, the proposed approach would thread the needle between the Federal Circuit's holding in Touchcom and its

9

holding in <u>Merial</u>.  The language in <u>Touchcom</u> seemed to hint that a Defendant could defeat the operation of 4(k)(2) altogether by consenting to jurisdiction.  In adopting the Seventh Circuit's burden-shifting approach to Rule 4(k)(2)(A), the Federal Circuit noted:

> A defendant who wants to preclude the use of Rule 4(k)(2) has <u>only to name some other state in which the suit could proceed</u>. Naming a more appropriate state <u>would amount to a consent to personal jurisdiction there</u>. . . . If, however, the defendant contends that he cannot be sued in the forum state <u>and refuses to identify any other state where suit is possible</u>, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

<u>Touchcom</u>, 574 F.3d at 1414 (quoting <u>ISI Int'l, Inc. v. Borden Ladner Gervais LLP</u>, 256 F.3d 548, 552 (7th Cir. 2001), <u>as amended</u> (July 2, 2001)) (citations omitted) (emphasis added). This has the merits of avoiding forum shopping by the plaintiff and fulfilling the goals of Rule 4(k)(2), but gives free license to defendants to engage in forum shopping and does not seem reconcilable with Section 1404(a) for the reasons stated by the Supreme Court in <u>Hoffman</u>:

> That thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless

> of the fact that such transferee district
> was not one in which the action 'might have
> been brought' by the plaintiff.

Hoffman, 363 U.S. at 344.  A defendant's consent after the

commencement of the action cannot render Rule 4(k)(2)

retroactively inapplicable because jurisdiction under 4(k)(2) is

created at the moment that the plaintiff commences the action,

assuming that the defendant is, in fact, truly not subject to

jurisdiction in any particular forum at the time the suit

commences.

In contrast, the language in Merial seemed to hint that a

defendant could not defeat the operation of Rule 4(k)(2) by

consenting to jurisdiction and that there was no reason why the

forum choice of the defendant should govern under the rule.  681

F.3d at 1294-95.  This has the merits of avoiding forum shopping

by the defendant and ensuring that the jurisdiction is one "in

which the plaintiff could have brought suit," id. at 1294, but,

if taken to exclude any possibility of transfer, would give free

license to plaintiffs to engage in forum shopping.

The approach suggested by this Court is that, by operation

of Rule 4(k)(2), the plaintiff could bring the suit in any

jurisdiction in the United States but, because of this, the

defendant could similarly move to transfer the case to any

jurisdiction.  Thus, the plaintiff's choice under Rule 4(k)(2)

is not cut short by a defendant's belated consent after the

commencement of the action, but the plaintiff's choice is not immune to evaluation of the transfer factors by the transferor court. The rule avoids giving either party carte blanche to forum shop, allows defendants to maintain a principled argument against personal jurisdiction while still submitting to jurisdiction in the transferor and transferee forum, and provides plaintiffs the initial choice of forum.

For these reasons, the Court finds that the civil action is one that "could have been brought" in the proposed transferee forum, and that transfer to the Eastern District of Michigan is permitted here.

## II. The Transfer Factors

### A. Plaintiffs' Choice of Forum

The first factor to evaluate in weighing a decision to transfer is the plaintiffs' choice of forum. In most cases, the plaintiff's choice of forum is entitled to deference when weighing the transfer factors. Furmanite America, Inc. v. Durango Assoc. Inc., 662 F. Supp. 348, 351 (E.D. Va. 1996). However, "if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum," then the plaintiff's choice is not entitled to substantial weight. Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (quoting Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 743 (E.D. Va.

2003)).  "[I]f there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 635 (E.D. Va. 2003).

Both Plaintiffs are subsidiaries of Orbital Corporation Limited ("Orbital Corporation"), an Australian company. Mem. in Supp. of Def. Robert Bosch LLC's Mot. to Dismiss at 2 (Docket No. 28). Orbital Australia is also an Australian company, and Orbital Fluid is a Delaware corporation. Neither Orbital Australia nor Orbital Fluid Technologies currently has any operations or facilities in this District. Id. at 17-19; Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 2-3 (Docket No. 45). Orbital Fluid owns an interest in Synerject LLC ("Synerject"), which is located in Newport News, Virginia, Am. Complaint for Patent Infringement at ¶ 1 (Docket No. 25), but Synerject is not a named party to the current lawsuit, and Synerject does not appear to have an interest in the patents asserted in this case.

Orbital alleges that it previously maintained operations in Newport News during the development of the '387 patent, which Bosch is accused of infringing. Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 3 (Docket No. 45). However, Orbital admits that "economic pressure forced Orbital USA to cut back

13

and eventually close its United States [o]ffice." Id. By all indications, Orbital has not had any presence in this district in over a decade.

Given these facts, the Court finds that the Plaintiffs' choice of forum is entitled to no weight in balancing the factors regarding transfer.

### B. Convenience of the Parties

The second factor to consider is the convenience of the parties. Included within this consideration is the "the cost of obtaining the attendance of witnesses, and the availability of compulsory process." Lycos, 499 F. Supp. 2d at 693 (quoting Rambus, 386 F. Supp. 2d at 717 n. 13). With respect to Daimler and Orbital, the potential fora are equally convenient. Orbital is located in Australia, Daimler is located in Germany, and neither would derive any particular convenience or efficiency from a trial held in Virginia as opposed to Michigan. With respect to Bosch GmbH, travel to Michigan could be marginally more convenient. Because Michigan is home to Bosch GmbH's domestic subsidiary, potential witnesses and representatives from Bosch GmbH could combine travel for litigation with other work-related trips.

With respect to the domestic parties, Michigan would be a far more convenient and cost effective location for Bosch LLC and would appear to be no more inconvenient or expensive than

14

Virginia for MBUSA and MBUSI.   Between the districts proposed for this litigation, Michigan is the <u>only</u> "home forum" available. On balance, this factor weighs in favor of transfer.

### C. Access to Evidence

The third factor in the transfer analysis is the ease of access to evidence.   In this case, the majority of evidence is likely to be abroad, Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 24-25 (Docket No. 45), and lends no weight in the analysis.   However, to the extent that any domestic evidence is to be found, it will be found in Michigan.   Mem. in Supp. of Def. Robert Bosch LLC's Mot. to Dismiss at 19-20 (Docket No. 28).

Orbital protests that Bosch LLC has not made a strong, particularized showing as to this factor, Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 24-25 (Docket No. 45), and has even expressly disclaimed the presence of some documents and information in Michigan in its interrogatory responses and responses to production, Pls.' Opp. to Def. Robert Bosch GmbH's Mot. to Dismiss at 22 (Docket No. 112).   But Bosch LLC has <u>not</u> claimed that it has <u>no</u> relevant information or evidence whatsoever or that it has no relevant witnesses whatsoever.   On the contrary, Bosch LLC has agreed to produce relevant and requested documents and information and has put forth at least one potential witness.   Reply Br. In Supp. of Def. Robert Bosch

15

GmbH's Mot. to Dismiss at 7-8 (Docket No. 114). Frankly, it would be astounding if Plaintiffs were truly planning on offering no evidence and calling no witnesses from a named defendant – a party of their choosing.

Regardless, this factor weighs in favor of transfer. Either there will be no evidence in Michigan and the fora are equally suitable or there will some evidence in Michigan and this factor weighs in favor of transfer. Moreover, this is not a case where transfer "shifts the inconvenience" to the other party. Orbital exited the U.S. market over a decade ago. The only entity or individual seemingly inconvenienced would be a single, potential third-party witness. Rather than "shifting the inconvenience," transfer here would reduce the inconvenience to some parties without increasing the inconvenience to any other party. This factor weighs in favor of transfer.

### D. Convenience of Witnesses

The fourth factor in the transfer analysis is the convenience of witnesses, including third-party witnesses. As with the documentary sources of evidence, most witnesses in the case are likely to come from foreign countries. Bosch LLC has, however, identified at least one potential witness in Michigan. Reply Brief in Supp. of Def. Robert Bosch LLC's Mot. to Dismiss at 10 (Docket No. 52); Decl. of Peter Tadros in Supp. of Robert Bosch LLC's Mot. to Dismiss (Docket No. 52-1). Moreover, any

witnesses from Bosch GmbH are likely to find travel to the home of their subsidiary at least somewhat more convenient than travel to Virginia. To the extent that any of these witnesses are required, holding the trial in Michigan will be more convenient and will minimize the litigation's interference with the activities of those individuals.

Orbital has identified one potential third-party witness located in the Eastern District of Virginia for whom travel to Richmond would be more convenient. Pls.' Opp. to Def. Robert Bosch LLC's Mot. to Dismiss at 23-24 (Docket No. 45); Decl. of John Richard Mills in Supp. of Orbital Australia Pty Ltd and Orbital Fluid Tech., Inc. Opp. to Transfer to the Eastern District of Michigan (Docket No. 45-1). This witness – John Mills – is one of the inventors of the '387 patent. Id. Although this fact is weighed in the final analysis, this is perhaps the only fact that weighs in favor of retention in the Eastern District of Virginia.

The cost of attendance for and convenience of the witnesses "is probably the single most important factor in transfer analysis." In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citing Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and

additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." In re Nintendo Co., Ltd., 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008)). It is true that Mr. Mills may be required to travel to Michigan and that this is likely to present an inconvenience. However, the fact that one potential third-party witness in Virginia might need to travel to Michigan and be thereby inconvenienced is not a sufficient reason to hold the trial in Richmond. This factor weighs lightly in favor of transfer.

### E. Interests of Justice

The fifth and final factor courts must consider in the transfer analysis is the interest of justice. The interest of justice focuses on "systemic integrity and fairness," and considers factors such as "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Jaffé, 874 F. Supp. 2d at 505 (quoting Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)) (internal quotations omitted). This factor weighs in favor of transfer to the Eastern District of Michigan.

First, it is fairer to burden jurors located in the Eastern District of Michigan than jurors located in the Eastern District of Virginia. Bosch LLC is located in Michigan and none of the parties call Virginia their home. Orbital claims that "keeping this case in Virginia would be consistent with Virginia's interest in protecting the rights of U.S. subsidiaries of foreign corporations that choose to locate their U.S. subsidiaries and other interests in Virginia." Pls.' Opp. to Defs.' [sic] Mercedes-Benz USA LLC and Mercedes-Benz U.S. Int'l, Inc. Mot. to Dismiss at 22 (Docket No. 46). But Orbital has no subsidiary in Virginia with any interest in this case. Bosch, on the other hand, does have a subsidiary in Michigan with an interest in the case. Am. Complaint for Patent Infringement at ¶ 8 (Docket No. 25). This argument favors transfer.

Second, transfer would avoid a contested question of jurisdiction that could otherwise risk rendering the entire litigation a moot and wasteful exercise. See Tyler v. Gaines Motor Lines, Inc., 245 F. Supp. 2d 730, 734 (D. Md. 2003) (transferring case because the question of personal jurisdiction was a "close one" and "would inject into the case an unnecessary legal issue that would render the entire litigation null and void, if, on appeal, jurisdiction were found to be lacking"); Datasouth Computer Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 452 (W.D.N.C. 1989) ("Courts have held that a

19

change of venue may conserve judicial resources, and serve the interests of the parties as well, if a case is transferred from a forum where there is a difficult question of personal jurisdiction or venue to a district in which there are not such uncertainties."). Defendants have agreed to jurisdiction in the Eastern District of Michigan in order to have all of Orbital's allegations addressed before a single court.

Finally, docket congestion is only "a minor consideration, which a court must view in light of other relevant factors, and which will receive little weight if all other reasonable and logical factors result in a transfer of venue." See Koh, 250 F. Supp. 2d at 639 (citing Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp., 277 F. Supp. 2d 581, 585 (E.D. Va. 2002); GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 520 (E.D. Va. 1999)). See also Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) ("When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'") (quoting Original Creatine, 387 F. Supp. 2d at 572).

Based on the factors above, the Court finds that the interests of justice and efficient adjudication warrant transferring the case to the Eastern District of Michigan.

## CONCLUSION

For the foregoing reasons, DEFENDANT ROBERT BOSCH LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 27); DEFENDANTS MERCEDES-BENZ USA, LLC AND MERCEDES-BENZ U.S. INTERNATIONAL, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 34); DEFENDANT ROBERT BOSCH GMBH'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 100); and DEFENDANT DAIMLER AG'S MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN (Docket No. 105) will all be granted with respect to the motions to transfer. Because the Defendants consent to jurisdiction in the Eastern District of Michigan, all motions to dismiss and DEFENDANT ROBERT BOSCH LLC'S MOTION FOR PROTECTIVE ORDER TO RESPOND TO RESPOND [sic] TO JURISDICTIONAL DISCOVERY REQUESTS 12-24 (Docket No. 85) will be denied as moot.

It is so ORDERED.

                                        /s/        REP
                              Robert E. Payne
                              Senior United States District Judge

Richmond, Virginia
Date:  July 1, 2015